Wolters Kluwer

**CT Corporation**
**Service of Process Notification**
10/06/2026
CT Log Number 553587914

## Service of Process Transmittal Summary

**TO:** Laura Langan, Paralegal
Union Pacific Railroad Company
1400 Douglas St
Omaha, NE 68179-0002

**RE:** **Process Served in Oregon**

**FOR:** Union Pacific Railroad Company (Domestic State: DE)

**ENCLOSED ARE COPIES OF LEGAL PROCESS RECEIVED BY THE STATUTORY AGENT OF THE ABOVE COMPANY AS FOLLOWS:**

**TITLE OF ACTION:** Re: FOREMOST INSURANCE COMPANY GRAND RAPIDS, MI AND FARMERS INSURANCE EXCHANGE // To: Union Pacific Railroad Company

**CASE #:** 26CV55577

**NATURE OF ACTION:** Property Damage Litigation

**PROCESS SERVED ON:** C T Corporation System, Salem, OR

**DATE/METHOD OF SERVICE:** By Process Server on 10/06/2026 at 15:03

**JURISDICTION SERVED:** Oregon

**ACTION ITEMS:** CT will retain the current log

Image SOP

Email Notification, Laura Langan lmlangan@up.com

Email Notification, Laura Langan lmlangan@up.com

Email Notification, Betsy Gassaway bsgassaw@up.com

Email Notification, Kelly Gearhart kmgearhart@up.com

**REGISTERED AGENT CONTACT:** CT Corporation System
780 Commercial Street? SE
Ste 100
Salem, OR 97301
866-401-8252
LargeCorporationTeam@wolterskluwer.com

The information contained in this Transmittal is provided by CT for quick reference only. It does not constitute a legal opinion, and should not otherwise be relied on, as to the nature of action, the amount of damages, the answer date, or any other information contained in the included documents. The recipient(s) of this form is responsible for reviewing and interpreting the included documents and taking appropriate action, including consulting with its legal and other advisors as necessary. CT disclaims all liability for the information contained in this form, including for any omissions or inaccuracies that may be contained therein.

# PROCESS SERVER DELIVERY DETAILS

**Date:** Tue, Oct 6, 2026
**Server Name:** Drop Service

| | |
|---|---|
| Entity Served | UNION PACIFIC RAILROAD COMPANY |
| Case Number | 26CV55577 |
| Jurisdiction | OR |

| Inserts | | |
|---|---|---|
| | | |

CIRCUIT COURT OF THE STATE OF OREGON

COUNTY OF WASCO

| | |
|---|---|
| FOREMOST INSURANCE COMPANY GRAND RAPIDS, MI AND FARMERS INSURANCE EXCHANGE,<br><br>Plaintiffs,<br><br>vs.<br><br>UNION PACIFIC RAILROAD COMPANY,<br><br>Defendant | EXEMPT FROM ARBITRATION<br>Amount of Claim: $633,434.42<br>Filing Fee: $584.00 (ORS 21.160(b))<br><br>Case No.: 26CV55577<br><br>SUMMONS |

TO: DEFENDANT UNION PACIFIC RAILROAD COMPANY:

IN THE NAME OF THE STATE OF OREGON: You are hereby required to appear and defend the complaint filed against you in the above-entitled cause within 30 days from the date of service of this summons on you. If you fail to appear and defend, the plaintiff will apply to the court for the relief demanded in the complaint.

NOTICE TO DEFENDANT
READ THESE PAPERS CAREFULLY

You must "appear" in this case or the other side will win automatically. To "appear" you must file with the court a legal paper called a "motion" or "answer." The "motion" or "answer" must be given to the court clerk or administrator within 30 days along with the required filing fee. It must be in proper form and have proof of service on the plaintiff's lawyer or, if the

plaintiff does not have a lawyer, proof of service on the plaintiff.

If you have any questions, you should see a lawyer immediately. If you help in finding a lawyer, you may call the Oregon State Bar's Lawyer Referral Service at (503) 684-3763 or toll-free in Oregon at (800) 452-7636.

DATED: October 2, 2026

AUDLEY & AUDLEY

Michael R Audley, Esq
Audley & Audley
OSB #230519
80 El Camino Real
Berkeley, CA 94705
510.548.4740
Email: audleylaw@gmail.com

CIRCUIT COURT OF THE STATE OF OREGON

COUNTY OF WASCO

| | |
|---|---|
| FOREMOST INSURANCE COMPANY GRAND RAPIDS, MI AND FARMERS INSURANCE EXCHANGE,<br><br>Plaintiffs,<br><br>vs.<br><br>UNION PACIFIC RAILROAD COMPANY,<br><br>Defendant | EXEMPT FROM ARBITRATION<br>Amount of Claim: $633,434.42<br>Filing Fee: $584.00 (ORS 21.160(b))<br><br>Case No.: 26CV55577<br><br>COMPLAINT FOR DAMAGES |

## GENERAL ALLEGATIONS

1. Plaintiffs FOREMOST INSURANCE COMPANY GRAND RAPIDS, MI and FARMERS INSURANCE EXCHANGE (hereinafter referred to as plaintiff) are, and at all time material were, active corporations organized and existing under the laws of the State of Oregon.

2. Defendant UNION PACIFIC RAILROAD COMPANY is, and at all times material was, an active Delaware corporation organized and operating under the laws of the State of Oregon.

3. On June 11, 2025 Justin and Jennifer Duarte (hereinafter Plaintiff's Insured) were the owners of the improved real property commonly known as 5651 Highway 30W, The Dalles, OR 97058 (hereinafter the Duarte Subject Property.) On June 11, 2025 Janice and John Crompton (hereinafter Plaintiff's Insured) were the owners of the improved real property commonly known as 4729 Simonelli, The Dalles, OR 97058 (hereinafter the Crompton Subject Property.) On June 11, 2025 a fire started immediately adjacent to railroad tracks owned and maintained by defendant and caused by its train on those

tracks. On June 11, 2025 the National Weather Service issued a Red Flag Warning due to a combination of strong winds, low relative humidity and hot temperatures. The fire resulting from defendant's actions spread and damaged both the Duarte Subject Property and Crompton Subject Property.

4. Plaintiffs' Insureds were insured for Property Damage and Loss Of Rents coverage by plaintiffs, at all times relevant herein. As a result of such insurance coverage, plaintiffs paid to their Insureds the amounts they lost because of the damage to the Subject Properties caused by defendant. Plaintiff FOREMOST paid a total of $263,484.30 to the Cromptons, which includes the Insured's $1,000.00 total deductible. Plaintiff FARMERS paid a total of $399,950.12 to the Duartes, which includes the Insured's $2,500.00 deductible. In return for such payments, plaintiffs are contractually and equitably subrogated to and expressly assigned their respective Insured's rights to seek recovery from the responsible party, defendant. Plaintiffs assert that right to subrogation in this action against defendants.

5. At all times mentioned herein, defendants, and each of them, were the owners, directors, agents and/or employees of each of the remaining defendants, and were at all times acting within the purpose and scope of said agency and employment, and each defendant has ratified and approved the acts of his agent.

<u>FIRST CLAIM FOR RELIEF BY PLAINTIFF</u>
(Negligence and Res Ipsa Loquitor)

6. Plaintiffs incorporate and re-allege each of the foregoing paragraphs as though fully set forth herein.

7. At all times relevant, it was the duty of Defendant to use reasonable care to avoid exposing Plaintiffs' Insureds' property to a foreseeable risk of harm.

8. Defendant has a duty of care to maintain, inspect, and operate its Tracks and Trains with the utmost care and prudence, because the operation of a railway exposes the public and neighboring property to serious risk of harm.

9. Defendant has a duty to operate safely in compliance with its Fire Prevention Agreement with the Oregon Department of Forestry, including a duty to minimize the discharge

of hot carbon particles, hot sparks, and/or embers, and a duty to properly inspect and maintain its exhaust system in good operating condition prior to each run during Fire Season, and a duty to develop and review with its employees and volunteers a fire prevention and action plan once a year and prior to the start of fire season.

10. Operating a railroad is a matter of public concern. Defendant owes a duty to the public to operate its railroad in a safe and prudent manner in compliance with Oregon state law and federal regulations.

11. Plaintiffs' insureds were property owners and residents in the fire zone, precisely the class of persons that state and federal railroad safety regulations are designed to protect. State and Federal railroad safety regulations, including but not limited to 49 C.F.R. Parts 213, 215, 220, 229, 232, 240, 242, 243, 245, and 271, and Or. Rev. Stat. Ann. § 477.645, 477.695, 824.060, and Or. Admin. R. 629-043-0015; Or. Admin. R. 629-043-0030; Or. Admin. R. 629-043-0020, were enacted to protect persons like Plaintiffs' insureds who own property near railroad operations from the specific type of harm—wildfire ignition and property damage caused by railroad operations—that occurred here.

12. Under 49 C.F.R. Part 229, Defendant has a duty, among other things, to inspect, maintain, repair, and operate its Trains, to ensure that they were in proper condition and safe to operate without unnecessary peril, including without emitting sparks or superheated particles capable of igniting a fire. 44. Under 49 C.F.R. Part 213, including 49 C.F.R. § 213.37, Defendant has a duty, among other things, to inspect and maintain its Tracks, including managing and controlling vegetation on or near its Tracks, so as to prevent a fire hazard.

13. In addition, consistent with federal regulations and industry practices and procedures, Defendant has the duty to:

a. Conduct prompt, proper, and frequent inspections of its locomotives and railcars, including particularly the Train;

b. Manage vegetation on or near its Tracks so as not to create a fire hazard;

c. Operate, maintain, and/or repair its locomotives and railcars, including particularly the Train, in such a way as to ensure their safe and proper operation, especially under dry and windy conditions where there is a high risk of wildfires;

d. Use appropriate and available technology, such as "track warning detectors"; appropriately place such detectors to ensure timely alerting of any potential problems; implement appropriate policies for the use of such detectors, including setting appropriate alarm thresholds and criteria for determining when a potentially dangerous condition exists; and ensure that such detectors are timely and properly inspected and maintained;

e. Ensure a proper mechanism for stopping or slowing malfunctioning locomotives and/or railcars, including the Train, in a timely manner to avoid ignition of a fire;

f. Hire, train, manage, oversee, and supervise its officers, agents, and employees, including the train engineer, conductor, brake operator, and dispatcher, concerning the operation of its Train on June 11, 2025;

g. Properly determine the adequacy and skill of its officers, agents, and employees, including the train engineer, conductor, brake operator, and dispatcher, concerning the operation of its Train on June 11, 2025;

h. Ensure that its officers, agents, and employees, including the train engineer and dispatcher, were properly instructed and trained regarding the risk of wildfires, and concerning safety and emergency procedures if a fire were ignited along its Tracks on June 11, 2025;

i. Develop and implement a wildfire mitigation plan;

j. Timely implement an emergency response plan in the event of fire ignition on or near its Tracks; and

k. Contain the spread of fire on or near its Tracks.

14. Defendant breached these duties by, among other things:

a. Failing to properly inspect, repair, and maintain the Train on or before June 11, 2025, including failing to correct the condition that caused the Train to emit sparks and superheated particles;

b. Failing to properly manage and control the dry, overgrown vegetation on or near its Tracks on or before June 11, 2025, to mitigate the risk of wildfire;

c. Failing to operate, maintain, and/or repair its Train in a manner that would ensure its safe and proper operation and mitigate the risk of wildfire, including operating the Train through dry, overgrown vegetation during red-flag conditions; d. Failing to maintain a vigilant lookout during the operation of the Train on June 11, 2025;

e. Failing to immediately notify train dispatchers about fires observed along its Tracks on June 11, 2025;

f. Continuing to operate the Train after it had ignited an initial wildfire, thereby igniting additional wildfires along the Tracks;

g. Failing to use, and/or respond to messages from, its "track warning detectors" along the Tracks on June 11, 2025, so as to prevent and/or rapidly respond to a fire;

h. Failing to appropriately place such detectors along the Tracks in Wasco County prior to June 11, 2025, to ensure timely alerting of any potential problems;

i. Failing to appropriately maintain such detectors along the Tracks in Wasco County prior to June 11, 2025, and failing to implement appropriate policies for its use, including setting appropriate alarm thresholds and criteria for determining when a fire or other potentially dangerous condition exists;

j. Failing to properly calibrate, maintain, test, and operate the brake systems on the Train;

k. Failing to adequately hire, train, manage, oversee, and supervise its officers, agents, and employees, including the train engineer, conductor, brake operator, and dispatcher involved in the operation of the Train on June 11, 2025;

l. Failing to adequately ensure that its officers, agents, and employees, including the train engineer and dispatcher, were properly instructed and trained regarding the risk of wildfires and concerning safety and emergency procedures in the event of a fire along its Tracks on June 11, 2025;

m. Reducing maintenance and operational resources—including through the 2019 layoffs and closures at the Hinkle Rail Yard—such that Defendant operated improperly maintained Trains and Tracks in a known high-risk wildfire area;

n. Failing to properly develop and implement a wildfire mitigation program;

o. Failed to comply with the fire safety requirements of its Fire Prevention Agreement with the Oregon Department of Forestry;

p. Failing to implement an emergency response plan in the event of fire on or near its Tracks on June 11, 2025; and

q. Failing to promptly contain the spread of fire on or near its Tracks on June 11, 2025.

15. Res Ipsa Loquitur. The ignition of one or more wildfires along Defendant's Tracks on June 11, 2025, is of a kind that ordinarily does not occur in the absence of negligence, and creates a strong inference that Defendant acted negligently, in that:

a. At the time the Fire ignited, Defendant's Train operated on the Tracks in the general area of origin of the Fire, and Defendant maintained exclusive control of the Train and Tracks that were the instrumentalities of the ignition;

b. There is overwhelming evidence that railroads, such as the Defendant's, have a long history of starting wildfires caused by sparks and superheated particles emitted by operating trains;

c. There is evidence that sparks and superheated particles emitted by Union Pacific Trains were sufficient to ignite nearby vegetation;

d. There is eyewitness evidence that there was no Fire prior to Defendant's Train passing

through the area of the Fire's origin;

e. There is eyewitness evidence that the Fire was observed immediately after Defendant's Train passed through the area of the Fire's origin;

f. There is eyewitness evidence that the location of the Fire, where it was first observed, was close to the railroad tracks;

g. There is no information or evidence that any individual or entity other than Defendant caused or contributed to the Fire's ignition;

h. Upon examination of the Fire's area of origin, there is no evidence of any other possible cause of the Fire other than the Defendant's negligence; and

i. After a reasonable opportunity for further investigation and discovery, Plaintiffs will likely have additional evidentiary support to establish the inference that Defendant's negligence caused Plaintiffs' insureds' damages.

16. Defendant's violation of the state and federal safety laws and regulations set forth herein constitutes negligence per se. The Federal Railroad Safety Act ("FRSA"), 49 U.S.C. § 20101 et seq., and its implementing regulations were enacted to promote safety in every area of railroad operations and to protect a specific class of persons—including property owners near railroad operations, such as Plaintiffs' insureds—from the specific type of harm that occurred here, including wildfire ignition and property damage caused by railroad operations. Defendant's conduct violated one or more state and federal laws and regulations, including but not limited to:

a. 49 C.F.R. Part 213, including but not limited to 49 C.F.R. § 213.37 (vegetation control);

b. 49 C.F.R. Part 215, including but not limited to 49 C.F.R. §§ 215.11, 215.13, and 215.15;

c. 49 C.F.R. Part 220, including but not limited to 49 C.F.R. §§ 220.13, 220.47, and 220.61;

d. 49 C.F.R. Part 229, including but not limited to 49 C.F.R. §§ 229.7, 229.9, 229.13, 229.21, 229.22, 229.23, 229.25, 229.27, 229.29, and 229.45;

e. 49 C.F.R. Part 232, including but not limited to 49 C.F.R. §§ 232.15, 232.103, 232.203, 232.205, 232.209, 232.211;

f. 49 C.F.R. Part 240, including but not limited to 49 C.F.R. §§ 240.105, 240.123, and 240.129;

g. 49 C.F.R. Part 242, including but not limited to 49 C.F.R. §§ 242.119 and 242.123;

h. 49 C.F.R. Part 243, including but not limited to 49 C.F.R. §§ 243.201 and 243.205;

i. 49 C.F.R. Part 245, including but not limited to 49 C.F.R. §§ 245.119 and 245.123;

j. 49 C.F.R. Part 271, including but not limited to 49 C.F.R. §§ 271.101, 271.105, 271.211, and 271.213;

k. Or. Rev. Stat. Ann. § 477.645, 477.695, and 824.060; and

l. Or. Admin. R. 629-043-0015; Or. Admin. R. 629-043-0020, Or. Admin. Code § 629-043-0025, Or. Admin. Code § 629-043-0026, and Or. Admin. R. 629-043-0030.

17. As a direct, proximate, and foreseeable result of Defendant's negligence and negligence per se, Plaintiffs' insureds suffered damage to their real and personal property.

18. As a result of this damage, Plaintiffs' insureds made claims to Plaintiffs, who in turn issued payments pursuant to their insureds' insurance policies.

19. As a direct and proximate result, Plaintiffs incurred damages in an amount to be proven at trial.

## SECOND CLAIM FOR RELIEF BY PLAINTIFF
(Trespass)

20. Plaintiffs incorporate and re-allege each of the foregoing paragraphs as though fully set forth herein.

21. On June 11, 2025, Plaintiffs' insureds were residents and owners of real and personal property in the Fire area and thus had an interest in the exclusive possession of such

property.

22. As described above, Defendant owed Plaintiffs' insureds numerous duties regarding the operation, inspection, maintenance, and repair of its Train, to ensure that it was in proper condition and safe to operate on June 11, 2025, without causing unnecessary peril and/or without igniting a wildfire.

23. Defendant also owed Plaintiffs' insureds numerous duties regarding the inspection and maintenance of its Tracks, including managing and controlling vegetation on or near its Tracks, to ensure that its Tracks were in proper condition and safe to operate a Train on June 11, 2025, without igniting a wildfire. 56. Defendant had actual knowledge that operating Trains under extreme fire conditions on June 11, 2025—including under active red-flag warnings, through dry and overgrown vegetation, with inadequately maintained Trains—would reasonably and foreseeably cause fire, smoke, ash, and other materials to spread to and enter upon Plaintiffs' insureds' property.

24. Defendant's knowledge of the substantial and unjustifiable risk of fire spread arose from, among other things, its knowledge of the propensity of its Trains to emit sparks and superheated particles, its knowledge of the high wildfire risk in the Columbia River Gorge under dry and windy summer conditions, the active red-flag warnings in effect on June 11, 2025, and prior incidents in the region, including the 2016 Mosier derailment and the 2023 Tunnel 5 Fire.

25. Notwithstanding this knowledge, and after Defendant's Train had already ignited an initial wildfire, Defendant continued to operate the Train under conditions in which it was substantially certain that additional fires would ignite and spread onto Plaintiffs' insureds' property.

26. Defendant negligently, carelessly, recklessly, and/or with conscious disregard of a known and substantial risk breached these duties, causing the Fire to ignite and spread out of control, and to intrude onto and into Plaintiffs' insureds' real and personal property.

27. Plaintiffs' insureds did not grant permission for any fire, smoke, or ash to enter their properties.

28. As a direct, proximate, and foreseeable result of Defendant's trespass, Plaintiffs' insureds suffered damage to their real and personal property.

29. As a result of this damage, Plaintiffs' insureds made claims to Plaintiffs, who in turn issued payments pursuant to their insureds' insurance policies.

30. As a direct, proximate, and foreseeable result, Plaintiffs incurred damages in an amount to be proven at trial.

## THIRD CLAIM FOR RELIEF
(Private Nuisance)

31. Plaintiffs reallege and incorporate the foregoing allegations as if fully set forth herein.

32. On June 11, 2025, Plaintiffs' insureds were the owners and lawful occupiers of real properties in the area to which the Fire spread. Plaintiffs' insureds had a possessory interest in real property that the Fire damaged and destroyed, including the right to quiet use and enjoyment.

33. As more fully described above, despite the propensity of its Train to ignite fires, and the inadequacy of the maintenance of its Trains and Tracks, on June 11, 2025, under hazardous weather conditions, Defendant operated its Train in Wasco County in violation of Oregon law and federal regulations.

34. Defendant's conduct in igniting and permitting the spread of the Fire was negligent, reckless, intentional, and in violation of statutory and regulatory duties, and constitutes culpable conduct sufficient to support a nuisance claim.

35. Defendant's negligent and unlawful operation of its Train on June 11, 2025, which resulted in the Fire, created conditions and/or permitted conditions to exist that:

a. Obstructed the free use of property, so as to substantially interfere with the comfortable enjoyment of life and property; and

b. Obstructed the free passage or use, in the customary manner, of public streets and highways.

36. These conditions, including flames, smoke, embers, ash, odors, gases, and airborne particles, substantially interfered with Plaintiffs' insureds' right to quiet enjoyment of their property.

37. At no time did Plaintiffs' insureds consent to Defendant's actions in creating these conditions.

38. An ordinary person of reasonable sensibility would be substantially annoyed and disturbed by Defendant's actions in creating these conditions.

39. Defendant realized or should have realized that the objectionable conditions posed an unreasonable risk of fire that could spread and damage Plaintiffs' insureds' property.

40. Whatever benefit Defendant realized by its behavior was outweighed by the harm its operations imposed on Plaintiffs' insureds.

41. The harms caused by Defendant were unique to each of Plaintiffs' insureds and different in kind from the general inconvenience and concern suffered by the public at large, in that Plaintiffs' insureds sustained direct physical damage to, and loss of use of, their real and personal property.

42. As a direct and proximate result of Defendant's creation of a nuisance, Plaintiffs' insureds suffered, and will continue to suffer damages to their property, as herein alleged.

43. As a result of this damage, Plaintiffs' insureds made claims to Plaintiffs, who in turn issued payments pursuant to their insureds' insurance policies.

44. As a direct, proximate, and foreseeable result, Plaintiffs incurred damages in an amount to be proven at trial.

FOURTH CLAIM FOR RELIEF
(Public Nuisance)

45. Plaintiffs reallege and incorporate by reference the foregoing allegations as if fully set forth herein.

46. The public has a common right to the safe and unobstructed use and enjoyment of the lands, air, roads, and communities of Wasco County, Oregon, free from the menace of uncontrolled wildfire, and to be free from interference with life, forest resources, and property caused by fire.

47. Defendant operated its Train through Wasco County on June 11, 2025, under red flag warnings of extreme wildfire risk and in an area with dry and overgrown vegetation on and adjacent to its Tracks, notwithstanding the known and foreseeable risk that its operations would ignite a wildfire.

48. As alleged above, Defendant's Train emitted sparks, hot debris, superheated particles, emissions, and/or other materials that ignited the overgrown, dry vegetation on or near its Tracks, starting the Rowena Fire, which then burned uncontrolled and spread across approximately 3,600 acres in Wasco County, Oregon, destroying more than 56 residences, 91 non-residential commercial properties, and 18 minor structures, and displacing more than 1,500 residents.

49. The Rowena Fire was a fire on forestland in Oregon burning uncontrolled and without proper action being taken to prevent its spread. Under ORS 477.064, such a fire, notwithstanding its origin, "is declared a public nuisance by reason of its menace to life, forest resources or property." The spread of the Rowena Fire across ownership boundaries is prima facie evidence that the fire was burning uncontrolled.

50. Independently, and at common law, Defendant's ignition and failure to control the Rowena Fire unreasonably interfered with rights common to the general public, including the public's right to the safe use and enjoyment of the lands, air, roads, and communities of Wasco

County, and obstructed the free passage and use, in the customary manner, of public streets and highways.

51. Defendant caused this public nuisance through conduct that was negligent, reckless, and/or abnormally dangerous. The interference was substantial and unreasonable: the gravity of the harm inflicted on the public and on Plaintiffs' insureds far outweighed any utility or benefit of the conduct that caused it.

52. Plaintiffs' insureds owned and lawfully occupied real and personal property within the area burned by and affected by the Rowena Fire. As a direct and proximate result of the public nuisance, their property was physically invaded, damaged, and destroyed by flames, smoke, embers, ash, gases, and airborne particles, and their use and enjoyment of that property was interfered with.

53. Plaintiffs' insureds thereby suffered special injury, different in kind and not merely in degree, from any harm suffered by the public generally, including the physical destruction of and damage to their real and personal property and the loss of use and enjoyment of that property.

54. Defendant realized or should have realized that its operation of the Train under the conditions alleged posed an unreasonable risk of igniting a fire that would burn uncontrolled, spread, and damage the property of Plaintiffs' insureds and the public.

55. As a direct, proximate, and foreseeable result of Union Pacific Railroad Company's creation and maintenance of this public nuisance, Plaintiffs' insureds suffered damage to their real and personal property, and Plaintiffs, having paid their insureds pursuant to their policies, incurred damages in an amount to be proven at trial.

56. Because the Rowena Fire occurred as the result of the recklessness, gross negligence, willfulness, and/or negligence of Union Pacific Railroad Company, Plaintiffs are entitled to recover twice the amount of their economic and property damages pursuant to ORS

477.089, in the alternative to the other measures of damages sought in this Complaint.

FIFTH CLAIM FOR RELIEF
(Inverse Condemnation)

57. Plaintiffs reallege and incorporate by reference the foregoing allegations as if fully set forth herein.

58. Defendant's operation and maintenance of its Tracks, which was a substantial cause of Plaintiffs' damages, are a public improvement for a public use under Oregon law.

59. Article XI, Section 4 of the Oregon Constitution provides: "No person's property shall be taken by any corporation under authority of law, without compensation first being made, or secured in such manner as may be prescribed by law."

60. Defendant is a "corporation" within the meaning of Article XI, Section 4. By this article, the Oregon Constitution prescribes that a de jure taking must only be effected under authority of law: typically through an eminent domain proceeding. When a corporation carries out an action, policy, or omission that has the effect of taking property without compensation, the corporation has effected a de facto taking under Oregon law and is properly subject to a claim for inverse condemnation.

61. By causing the Rowena Fire, Defendant took Plaintiffs' insureds' property, without compensation, and by means other than eminent domain or any other authority of law. Article I, Section 18 of the Oregon Constitution provides: "Private property shall not be taken for the public use, nor the particular services of any man be demanded, without just compensation; nor except in the case of the state, without such compensation first assessed and tendered; provided that the use of all roads, ways and waterways necessary to promote the transportation of the raw products of mine or farm or forest or water for beneficial use or drainage is necessary to the development and welfare of the state and is declared a public use."

62. Defendant's design, development, construction, installation, control, management, maintenance, inspection, ownership, and operation of its Tracks constitute a public

improvement for a public use.

63. The damage resulting from the Rowena Fire was the "necessary, certain, predictable, or inevitable" consequence, within the meaning of Dunn v. City of Milwaukie (2014) 355 Or. 339, 361, of actions or omissions taken by the Defendant that caused the fires and/or were the natural and ordinary result of such actions or omissions. The damage resulting from the Rowena Fire was the necessary, certain, predictable, or inevitable consequence of Defendant's operation and maintenance of its Train and Tracks.

64. As explained above, the Courts in this country have recognized the inherent danger of fire in the operation of trains during fire conditions for over 100 years. Atchison, T. & S.F.R. Co. v. Matthews, 174 US 96, 101, 19 S Ct 609, 611, 43 L Ed 909 (1899) ("[t]hat there is peculiar danger of fire from the running of railroad trains is obvious. The locomotives, passing, as they do, at great rates of speed, and often when the wind is blowing a gale, will, unless the utmost care is taken (and sometimes in spite of such care), scatter fire along the track.").

65. In the Rowena Fire, the Defendant's Train and Tracks substantially caused Plaintiffs' damages pursuant to a "public use" as defined by Oregon law. Property that is taken in connection with the operation of a utility, whether or not it is a result of intentional operations or negligent practices, is property that is taken for a "public use." The property damaged by Defendant by and through the Rowena Fire was thereby taken for a public use.

66. As alleged above, Union Pacific intentionally operates Trains that emit sparks and superheated particles through dry, overgrown vegetation in the fire-prone Columbia River Gorge during hot, dry, and windy summer conditions. Given these conditions and Union Pacific's operations, the ignition and spread of wildfire onto adjacent property was the necessary, substantially certain, predictable, and/or inevitable consequence of Defendant's conduct in the ordinary course of its operations—as confirmed by the recurrence of the same ignition pattern, on the same rail corridor, under the same conditions, only twenty-one days later.

67. Defendant has a non-delegable duty to maintain and upkeep its Trains and Tracks, which includes maintenance of its Trains and vegetation management around its Tracks. The inherent danger in Defendant failing to maintain and continuously upkeep its Trains and the surrounding vegetation around its Tracks ultimately resulted in the Rowena Fire and damaged Plaintiffs' insureds' property.

68. Given the limitations of Defendant's maintenance and upkeep of its Trains and Tracks, as well as Defendant's intentional operation of its Train during the relevant time period in this location, the Rowena Fire was the natural and ordinary consequence of Defendant's actions because it was the necessary and inevitable result of its operations.

69. The damage to Plaintiffs' insureds' property was the inescapable and unavoidable consequence of Defendant's Train and Tracks as deliberately designed, constructed, and maintained. This damage was the necessary and probable result of Defendant's public improvement of operating trains and a railroad.

70. As an actual result of Defendant's aforementioned acts and/or omissions, Plaintiffs' insureds were permanently deprived of the use and enjoyment of their property. As a direct result of the taking of the property, Plaintiffs paid their insureds in an amount to be proven at trial.

WHEREFORE plaintiffs pray for relief as follows:

(a) against defendant in the amount of $663,434.42;

(b) for just compensation for the property taken by inverse condemnation;

(c) for their costs incurred herein and such other and further relief as the court may deem just and proper; and

(d) for interest and penalties accruing from the date of this complaint.

///

///

DATED: August 7, 2026

AUDLEY & AUDLEY

Michael R Audley, Esq
Audley & Audley
OSB #230519
80 El Camino Real
Berkeley, CA 94705
510.548.4740
Email: audleylaw@gmail.com

Oregon Courts
Oregon Judicial Department

# An Option for Resolving Your Dispute: Mediation

**Important Notice:** If you are receiving this form as the filing party, you must serve this form on the responding party.

## What is mediation?

- A voluntary way to resolve your case with the help of a neutral person (the mediator). Instead of having a judge decide your case, you can work with a mediator to settle your case. You can still go to trial if you do not reach an agreement.

- The mediator will help you and the other party communicate and come up with options to settle the case. The mediator does not take sides or give legal advice.

## How does mediation work?

- The mediator will explain the process at the beginning of mediation. Parties may meet with the mediator together or the mediator may meet with you each separately. Either party can ask to meet with the mediator alone.

- During mediation, each party has an opportunity to suggest ideas for moving forward. The mediator helps the parties come up with ideas and possible solutions.

- If both parties agree to a resolution, you may not need to go to court or arbitration. There is only a resolution in mediation if both parties agree to it.

## Why should I mediate?

- It can be faster, less expensive, and less stressful than a trial or hearing.
- Parties decide the outcome instead of a judge.
- Parties can find more creative ways to resolve the dispute.
- It's private and confidential (with a few exceptions).
- It gives parties an opportunity to hear each other's perspectives.
- Parties are more likely to follow mediated agreements than court judgments.
- Parties often report higher satisfaction than in a court trial.

## Things to consider before mediation.

There may be times when mediation is not appropriate. Tell your mediator or attorney if:

- Mediation poses a risk to your safety;
- You can't make decisions about your case; or
- You think you'll agree to something you don't want.

The mediator may be able to address your concerns so that you can mediate.

# Local Mediation Program Information

**Counties: Hood River, Gilliam, Sherman, Wasco Wheeler**

**Mediation programs: Six Rivers Dispute Resolution Center**

**☒ Landlord tenant:**

**Cost to parties: ☒ Free**

**In addition to their free, confidential mediation for landlords and tenants, Six Rivers also offers mediation services in some limited areas of:**

- **Torts**
- **Small Claims**
- **Estates**

**Primarily Six Rivers serves individuals who are not represented by counsel and who seek resolutions that are alternatives to litigation. Consultations with potential parties are free and confidential, and if mediation is an option, they offer rates of $175 per session, per party, that can be reduced or waived based upon need. They never turn away anyone based on inability to pay.**

# Contact Information

**Six Rivers Dispute Resolution Center**

**(541) 386-1283**

**info@6rivers.org**

**www.6rivers.org**

**This form is available in Spanish, Korean, Russian, Traditional Chinese, Arabic and Vietnamese on the court's website:**

**https://www.courts.oregon.gov/courts/sherman/help/Pages/Mediation-Notice.aspx**